LARRY RUDOLPH MIDDLETON AND FRED NEL
MIDDLETON v. STATE OF MARYLAND

[No. 1400, September Term, 1980.]

*Decided July 9, 1981.*

The cause was submitted on briefs to Morton, Thompson and Weant, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Louis P. Willemin, Assistant Public Defender,* for appellants.

Submitted by *Stephen H. Sachs, Attorney General, Michael A. Anselmi, Assistant Attorney General,* and *Steven Braun, State's Attorney for Charles County,* for appellee.

Weant, J., delivered the opinion of the Court.

On 11 September 1980, a jury in the Circuit Court for Charles County convicted the appellants Larry Rudolph Middleton and his brother Fred Nel Middleton of robbery. Challenging these convictions in this Court, the Middleton siblings voice the following complaints:

  I. [They] were denied the right to be present at all stages of their trial.
  II. [They] were denied the right to a fair and impartial trial where the court refused to permit an alibi witness to testify.
  III. The trial court's instructions to the jury contained plain error material to [their] rights.
  IV. Appellant Fred Middleton's sentence was based in part upon an impermissible consideration.

As we shall explain, none of these protestations is meritorious.

## I.

At the conclusion of the voir dire examination of the prospective jurors, a discussion ensued at the bench concerning the manner in which peremptory challenges would be exercised. At the close of this conference, counsel for the Middleton brothers moved to strike certain jurors.

The appellants now contend that by virtue of their absence from this proceeding they were denied the right to be present at all stages of their trial.

We are convinced that our recent decision in *Green v. State,* 49 Md. App. 1 (1981), is controlling here. Hence, because the bench conference in question involved only argument on a question of law, the appellants' presence thereat was not required. *Id.* at 7-18.

## II.

The following quotation captures the essence and the significance of the issue presented in the appellants' second complaint.

> Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate. . . . The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. [*United States v. Barron,* 575 F.2d 752, 758 (9th Cir. 1978) (quoting *Williams v. Florida,* 399 U.S. 78, 81-82, 90 S. Ct. 1893, 1896, 26 L.Ed. 2d 446 (1970))].

With this in mind we shall consider the facts now before us.

After the jury was selected and sworn, counsel for Fred Middleton proffered to the trial court that during the recess following the impaneling of the jury, he discovered a previously unknown, alibi witness, Mrs. Rosalie Rosier. It then was determined that a member of the jury knew the prospective witness. Although this juror stated that her ability to render a fair and impartial verdict would not be affected by her acquaintance with Mrs. Rosier, the State asserted that had it known that the juror knew a witness it would have moved to strike her. The court deferred ruling on the matter until such a time as the witness appeared in court.

Trial continued and eventually the defense rested. Thereafter, when the supposed alibi witness appeared, the defense requested that it be permitted to reopen its case. The State objected on the ground that Mrs. Rosier's existence as an alibi witness had not been disclosed to it during the course of discovery; ultimately, the court refused to allow her to testify. On appeal, the brothers Middleton claim that this ruling deprived them of a fair and impartial trial.

We deem this second issue of the Middletons to be an abuse of discretion question because we are persuaded that there was a violation of rule 741 d 3 of the Maryland Rules of Procedure; therefore, in accordance with subsection g of that same rule, it was within the trial court's power to order whatever sanction it found to be appropriate under the circumstances.

Our research has unearthed several federal cases [1] dealing with an issue similar to that with which we are now confronted, *i.e.,* whether under the circumstances the trial court abused its discretion in refusing to allow an alibi witness to testify. We are inclined to adopt the standard espoused by the Fifth Circuit Court of Appeals in *United States v. Myers,* 550 F.2d 1036 (5th Cir. 1977), and followed by the Sixth Circuit Court of Appeals in *United States v. White,* 583 F.2d 899 (6th Cir. 1978). In *White,* at page 902, the circuit court enumerated the "factors to be considered in determining whether the trial court properly exercised its discretionary power to exclude the testimony of an undisclosed witness."

"[A] district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevent factors arising

1. We are comfortable relying on federal cases as authority for our holding relative to this issue since the federal rule concerning alibi witnesses, *i.e.,* Fed. R. Crim. P. 12.1, entitled "Notice of Alibi," is for all intents and purposes the same as our rule on the subject.

out of the circumstances of the case. . . . ([F]ootnote omitted.) [Quoting *United States v. Myers, supra,* 550 F.2d at 1043 (citation omitted)].

Analyzing the instant case in the light of the listed factors, we are constrained to hold that the trial court imposed a proper sanction.

First, like the trial judge, we hold that the amount of prejudice resulting from the failure to disclose the witness in question until the first day of trial was significant. Had Mrs. Rosier been allowed to testify, the State would have been deprived of an opportunity to interview her and to investigate the veracity of her proposed testimony. More importantly, it would have been denied an opportunity to strike a member of the jury who acknowledged that she was a friend of the prospective witness.

Next, as to the reason for nondisclosure, the record indicates that counsel for the defense, while interviewing a State witness during the noon break on the first day of trial, learned for the first time that the witness's mother was a potential exculpatory witness. Although counsel would have had the trial court find that the responsibility for the disclosure of said alibi witness rested with the State, that court was not inclined to so assign the burden of disclosure. We concur since we believe that the appellant Fred Middleton, who allegedly was at Mrs. Rosier's home at the time of the robbery in question, was in as good a position as the State, or for that matter a better one, to reveal the existence of this alibi witness. It is for this reason that rule 741 d 3 contemplates disclosure by the defendant.

We note that the record otherwise does not readily support a finding of impropriety on the part of either the prosecution or the defense for the complained of nondisclosure. Therefore, while the factor of failure to disclose, standing alone, might not necessarily weigh heavily against the appellant, it does when viewed in the light of the previously discussed prejudice to the State; prejudice, which, in the light of *Myers's* third factor, could only be exacerbated rather than mitigated in the instant case, since jeopardy had

already attached when Mrs. Rosier's existence as an alibi witness was revealed.

Finally, we look to the weight of the evidence supporting the appellants' guilt. Here we have the testimony of the victim, and that of the policeman who interviewed him, which testimonies, not suprisingly, are contradicted by that of the appellants and a girlfriend. We, like the circuit court in *United States v. White, supra,* conclude that since the jurors neither believed the alibi witness who did testify nor the appellants' versions of the facts, "it is doubtful [that they] would have believed the alibi testimony of an additional witness." 583 F.2d at 902 (citation omitted).

In summary, having considered the circumstances concerning the undisclosed alibi witness in the case at bar in the light of the factors enumerated in *United States v. White* and *United States v. Myers, supra,* we are persuaded that the trial court properly exercised its discretion when it excluded Mrs. Rosier's testimony.

## III.

The instruction to which the appellants take exception reads as follows:

> Ladies and gentlemen, you are well seasoned jurors on the verge of ending tenure, so you are accustomed to instructions and accustomed I suspect to the role of The Court in offering instructions in a criminal case.
>
> As you recall from prior exercises, I am sure you know that in a criminal case in the State of Maryland what the judge does at the request of the parties is advisory in nature with regard to the judge's understanding of the law applicable to the case that you, the jurors, are judges of both law and fact in a criminal proceeding and if you find that the law is other than as the judge suggested to you it is, then it is your perrogative [*sic*] to act accordingly.

> However, I would urge upon you the notion that it is up to you to define the law is different rather than to speculate. But what that all means is that the attorneys in a criminal case distinguished from a civil one are free to argue the law to you as they would have you find it.

Although the appellants concede that they did not object to this instruction, they nevertheless argue that it was plainly erroneous under *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), because it invited the jury "to interpret for itself all aspects of the law, both with regard to the 'law of the crime' and with regard to many federal constitutional rights."

Whether or not the instruction here is erroneous in the light of the Court of Appeals decision in *Stevenson,* a decision which was rendered after the close of the trial in the instant case, is a question we do not choose to address. We decline to do so since our reading of the record does not persuade us that we are faced with circumstances that are so compelling or exceptional that we should find plain error, *Sine v. State,* 40 Md. App. 628, 632-34, 394 A.2d 1206, 1209-10 (1978), *cert. denied,* 284 Md. 748 (1979); this is especially true since the trial court admonished the jury not to speculate about the law, and since it explained what is meant by the terms "presumption of innocence" and "beyond a reasonable doubt." Consequently, the appellants' third contention was not properly before us.

## IV.

At Fred Middleton's disposition it was noted that the presentence investigation report referred to a theft charge for which the appellant had been incarcerated prior to his being acquitted thereof. Feeling that this caused the hearing judge to consider improperly a bald accusation of criminal conduct, the appellant now objects.

While we are inclined to agree with the State that the appellant has waived this objection by not raising it at the trial

court level, we note that in any event the objection fails. As the Court of Appeals stated in *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981), at page 481, 425 A.2d at 643:

> In considering what is proper punishment, it is now well-settled in this State that a judge is not limited to reviewing past conduct whose occurrence has been judicially established, but may view "reliable evidence of conduct, which may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried." *Henry v. State,* 273 Md. 131, 147-48, 328 A.2d 293, 303 (1974). Indeed, since an acquittal does not necessarily establish the untruth of all evidence introduced at the trial of the defendant, the "sentencing judge also may properly consider reliable evidence concerning details and circumstances surrounding a criminal charge of which a person has been acquitted." *Id.*

As a matter of fact the record clearly shows that the trial court did not consider this charge as a conviction but took into account only the failure to reform despite prior incarceration.

For the reasons stated, the judgments of the Circuit Court for Charles County are affirmed.

*Judgments affirmed.*
*Costs to be paid by the appellants.*